UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHERYL J. MADERE                              CIVIL ACTION

VERSUS                                        NUMBER: 19-0864

ANDREW SAUL,                                  SECTION: "E"(5)
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION

## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2(B), this matter comes before the Court on the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration denying Plaintiff's application for Disability Insurance Benefits ("DIB").  (Rec. docs. 16, 19).

Cheryl J. Madere, Plaintiff herein, filed the subject application for DIB on February 5, 2016, alleging disability as of June 30, 2014.  (Tr. pp. 146-147).  In a "Disability Report-Adult" form that appears in the administrative record below, the conditions limiting Plaintiff's ability to work were identified as restless leg syndrome, fibromyalgia, a herniated/bulging disc in the lower back, severe depression, arthritis, high blood pressure, hypothyroidism, obesity, carpal tunnel syndrome, and chronic obstructive pulmonary disease.  (Tr. p. 167-182).  Plaintiff's application for DIB was denied at the initial level of the Commissioner's review process on September 7, 2016.  (Tr. pp. 90-93).  Pursuant to Plaintiff's request, a hearing de novo before an Administrative Law Judge ("ALJ") went forward on December 13, 2017 at which Plaintiff, who was represented by counsel, and a Vocational Expert ("VE") appeared and testified.  (Tr. pp. 94, 32-74).  On February 23, 2018, the ALJ issued a written decision in which she concluded that Plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. pp. 13-31).  The Appeals Council ("AC")

subsequently denied Plaintiff's request for review of the ALJ's decision on December 3, 2018, thus making the ALJ's decision the final decision of the Commissioner. (Tr. pp. 1-6). It is from that unfavorable decision that the Plaintiff seeks judicial review pursuant to 42 U.S.C. §405(g).

In her cross-motion for summary judgment, Plaintiff frames the issues for judicial review as follows:

1. The decision rejects the uncontested findings of claimant's treating gastroenterologist and primary treating physician with no medical opinion in support of its findings.

2. The decision "accords significant weight to the opinions of Dr. Williams..., which is consistent with the overall objective medical evidence" (TR.-p. 21)[1] but rejects without explanation his opinion that claimant could perform less than the full range of light work.

3. The decision rejects the opinions of the treating and examining physicians based upon the assumption that "the physicians relied quite heavily on the claimant's subjective complaints" without providing any basis for the assumption.

4. The decision requires an incorrect burden of proof.

(Rec. doc. 16-2, p. 1).

Relevant to the issues to be decided by the Court are the following findings that were made by the ALJ:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since August 1, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar and cervical potions of the spine, status-post

---

[1] Elsewhere in her supporting brief, the applicable page within the administrative record was cited as page 25. (Rec. doc. 16-2, p. 11).

remote history of cervical spine surgery, hypertension, obesity, and depression (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except [that she can] lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for a total of 6 hours in an 8-hour workday, sit for a total of 6 hours in an 8-hour workday; and she should avoid concentrated expos[ure] to fumes, odors, dusts, gases, [and] poor ventilation in the work place. The claimant is able to understand, remember and carry out 3-5 step instructions, remember locations and work like procedures, maintain sufficient attention and concentration to perform semi-complex tasks, and sustain a routine without special supervision. The claimant retains the ability to maintain socially appropriate behavior in a work setting, perform activities within a schedule, maintain regular attendance, make semi-complex work related decisions, be awar[e] of normal hazards, travel to unfamiliar places, and set realistic goals.

6. The claimant is capable of performing past relevant work as a [h]ardware supply sales representative, DOT No. 274.357-034, light exertional work, skilled (SVP 5). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2014, through the date of this decision (20 CFR 404.1520(f)).

(Tr. pp. 18, 19, 20, 26, 27).

Judicial review of the Commissioner's decision to deny DIB is limited under 42 U.S.C. §405(g) to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision and (2) whether the decision comports with relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987). If the

Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.  42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420 (1971).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983).  The Court may not re-weigh the evidence or try the issues *de novo*, nor may it substitute its judgment for that of the Commissioner.  *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1983).  Conflicts in the evidence are for the Commissioner to resolve, not the courts.  *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983).

A claimant seeking DIB bears the burden of proving that she is disabled within the meaning of the Social Security Act.  *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A).  Once the claimant carries her initial burden, the Commissioner then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and is, therefore, not disabled.  *Harrell*, 862 F.2d at 475.  In making this determination, the Commissioner uses the five-step sequential analysis set forth in 20 C.F.R. §404.1520 as follows:

1.    An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings;

2.     An individual who does not have a "severe impairment" will not be found to be disabled;

3.     An individual who meets or equals a listed impairment in Appendix 1 of the Regulations will be considered disabled without consideration of vocational factors;

4.     If an individual is capable of performing the work that she has done in the past, a finding of "not disabled" must be made;

5.     If an individual's impairment precludes her from performing her past work, other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.

On the first four steps of the analysis, the claimant bears the initial burden of proving that she is disabled and must ultimately demonstrate that she is unable to perform the work that she has done in the past. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 2294 n. 5 (1987). In determining whether a claimant is capable of performing the work that she has done in the past, the ALJ is required to assess the demands of the prior work and to compare those demands to the claimant's present capabilities. *Villa*, 895 F.2d at 1022; *Hollis v. Bowen*, 837 F.2d 1378, 1386 (5th Cir. 1988); *Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980). The assessment of the demands of a claimant's prior work "... may rest on descriptions of past work as actually performed or as generally performed in the national economy." *Villa*, 895 F.2d at 1022 (citing *Jones v. Bowen*, 829 F.2d 524, 527 n. 2 (5th Cir. 1987)). A finding that the claimant is or is not disabled at any point in the five-step review process is conclusive and terminates the Commissioner's analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

As noted earlier, Plaintiff's first challenge to the Commissioner's decision is that the ALJ rejected the "uncontested" opinions of her treating gastroenterologist, Dr. Rahid Shah, and her primary treating physician, Dr. Michael Bodin, without adequately supported

medical opinions to the contrary. For present purposes, the Court will focus on the findings and opinions of the former practitioner.

The 845-page administrative record in this case contains records from Dr. Shah going back to October 8, 2013. On that date, pursuant to a referral from Dr. Bodin, Plaintiff was seen for complaints of abdominal pain, abdominal cramping, and diarrhea. Plaintiff reported an onset of nausea/vomiting and diarrhea one month earlier which precipitated a visit to urgent care and an emergency room where various tests were performed which produced normal results.[2/] She also reported a recent increase in stress and a history of "chronic 'stomach' problems" that were largely unrelieved by over-the-counter medications. Plaintiff complained of significant lower abdominal cramping followed by watery diarrhea two to three times per day that caused her to wake from her sleep. Vomiting was said to be rare and Plaintiff had recently experienced a three-pound weight loss. The "review of systems" portion of the treatment note was positive for nausea, vomiting, abdominal pain, and diarrhea. However, upon physical examination findings related to the abdominal area were insignificant. The assessment was nausea with vomiting, diarrhea, and weight loss. Librax was prescribed and an EGD/colonoscopy were to be scheduled. (Tr. pp. 662-666). A CT scan of the abdomen and pelvis on September 13, 2016 was normal except for a fatty liver and colonic diverticulosis. (Tr. p. 707). The

---

[2/] Between the ER visit and the referral by Dr. Shah, Plaintiff had seen Dr. Bodin on September 27, 2013 and reported at that time that her GI symptoms had resolved. (Tr. pp. 260-263). However, nausea had returned by September 30, 2013. (Tr. pp. 264-268). In a subsequent visit to Dr. Bodin on September 8, 2014, Plaintiff reported no diarrhea. (Tr. pp. 291-296). Diarrhea was denied by Plaintiff on October 15, 2015 (tr. pp. 314-320) on January 29-2016 (tr. pp. 629-633), and again on April 29, 2016. (Tr. pp. 626-629). By July 29, 2016, Plaintiff reported daily nausea for the previous two months and almost daily vomiting after drinking coffee. (Tr. pp. 618-623). On August 29, 2016, Plaintiff complained of persistent nausea over the previous three months and vomiting at times after eating. Abnormal liver function was revealed through creatinine function tests and some abdominal pain was elicited on physical examination. (Tr. pp. 613-618). Chronic nausea and vomiting were present on September 22, 2016. A high CT scan was reported as negative. (Tr. pp. 605-610). Chronic nausea, vomiting, and daily watery stools were still present on October 21, 2016. A HIDA scan was to be conducted. (Tr. pp. 598-604).

EGD/colonoscopy were performed by Dr. Shah on November 1, 2013, at which time Plaintiff advised that the Librax was helpful in addressing her cramping but that diarrhea persisted.  (Tr. pp. 829-831).  Biopsies of the collected tissue specimens were negative for dysplasia, malignancy, goblet cell metaplasia, or eosinophilic esophagitis.  (Tr. pp. 832-833).

In light of Plaintiff's continued complaints of nausea and vomiting, a NM hepatobiliary HIDA scan was performed on October 26, 2016 which demonstrated an abnormal ejection fraction rate.  (Tr. p. 702).  Plaintiff returned to Dr. Shah on November 3, 2016 for her chronic, persistent nausea and vomiting and was advised of the positive HIDA results.  It was reported that in the meantime, one Dr. Kimbrough had ordered an ultrasound and scheduled a cholecystectomy.  The assessment was chronic diarrhea secondary to IBS which was to be addressed after Plaintiff's gallbladder surgery.  (Tr. p. 596-598).[3/]  The gallbladder surgery was performed by Dr. Kimbrough on November 18, 2016.  (Tr. pp. 470-472).  Pathologic studies of the excised tissue were negative for dysplasia or malignancy.  (Tr. p. 473).

Plaintiff was seen again by Dr. Shah on January 5, 2017, reporting that her diarrhea had "significantly worsened" since undergoing gallbladder surgery such that she had begun using Depends, was eating less than once per day, and was experiencing weight loss.  She endorsed abdominal pain in addition to diarrhea but had no distension, mass, or tenderness.  The assessment was chronic diarrhea and Dr. Shah suspected that Plaintiff was suffering from IBS.  (Tr. pp. 587-589).  In connection with this evaluation, Dr. Shah completed a one-page "To Whom It May Concern" form containing a series of questions

---

[3/] A pre-operative examination was conducted by Dr. Bodin on November 11, 2016.  (Tr. pp. 590-596).

7

that were susceptible of check-the-box "YES" or "NO" answers.  There, the doctor provided affirmative answers to the following questions:  1) at least twice a day, on average, Plaintiff experienced cramping of sufficient severity to constrain her to the bathroom or the bed; 2) such episodes ordinarily persisted for a period of 45 to 90 minutes; 3) at least twice a week, on average, Plaintiff experienced exacerbations during which she was constrained to defecate at least six times per day; and 4) Plaintiff was frequently fecally incontinent, requiring her to use a Depends undergarment followed by cleansing in the shower.  In response to a fifth question on the form, Dr. Shah indicated that his answers to the first four questions would not have been different at any time since June of 2014.  In a space on the form reserved for "[r]emarks," the doctor wrote that he believed that Plaintiff suffered from IBS.  (Tr. p. 475).[4/]

In her written decision of February 28, 2018, the ALJ found at step two of the §404.1520 analysis that Plaintiff suffered from severe impairments in the form of degenerative disc disease of the lumbar and cervical portions of the spine, status-post remote history of cervical spine surgery, hypertension, obesity, and depression, finding that those conditions significantly limited Plaintiff's ability to perform basic work activities. (Tr. p. 18).  In doing so, the ALJ recalled the applicable standard that "[a]n impairment is non-severe only if it is a slight abnormality having such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of [her] age, education or work experience."  (*Id.*).  Addressing a number of other conditions from which Plaintiff suffered but that she found to be non-severe, the ALJ

---

[4/] In a subsequent treatment note from July 7, 2017, it was reported that Plaintiff had been experiencing loose stools since her gallbladder surgery of November 18, 2016 notwithstanding a negative GI workup.  (Tr. p. 533).  On September 27, 2017, it was again noted that Plaintiff suffered from chronic diarrhea since having gallbladder surgery.  (Tr. p. 495).

acknowledged that "[t]he record show[ed] treatment ... for possible irritable bowel syndrome ("IBS"), ... [h]owever, there is no evidence ... of additional limitations because of these impairments." (Tr. p. 19). Speaking further to that condition, the ALJ noted that "[t]he claimant's gastroenterologist submitted a MSS [medical source statement] dated January 5, 2017 and noted that he believes she has IBS [Ex 20F]. The workup for stomach problems does not correlate to someone who is having the severity she alleges [Ex 21F]." (*Id.*)[5/]

Later in her written decision, in assessing Plaintiff's residual functional capacity ("RFC") to work, the ALJ first summarized Plaintiff's hearing testimony respecting IBS, noting that she testified to diarrhea attacks seven to 10 times per day, sometimes not making it to the bathroom in time to avoid an embarrassing accident. (Tr. pp. 22, 53-56). Such episodes would take her away from her workstation for 30 minutes at a time. (*Id.*). Plaintiff would also experience episodes of diarrhea within 15 to 20 minutes of eating. (*Id.*). After discussing the hearing testimony, the ALJ proceeded to summarize the medical evidence that was generated by Plaintiff's treating and examining physicians, following which she assigned weight to the opinions of those physicians as well as the opinions of the state-agency medical consultants who reviewed Plaintiff's file at the first step of the Commissioner's administrative review process. (Tr. pp. 22-26). As respects the questionnaire form that was completed by Dr. Shah on January 5, 2017, the ALJ declined to give the doctor's opinions set forth therein controlling weight as "[t]he workup for stomach problems does not correlate to someone who is having the severity she alleges. Moreover, it appears the physician[] relied quite heavily on the claimant's subjective complaints." (Tr.

---

[5/] The exhibit cited by the ALJ, exhibit 21F, is some 538 pages in length and covers Plaintiff's treatment and testing for a variety of conditions between November 1, 2013 and October 23, 2017. (Tr. pp. 476-833).

pp. 25-26).[6]   Contrary to Dr. Shah's opinions, the ALJ gave the opinions of the non-examining state-agency medical consultants "significant weight."  (Tr. p. 25).

Plaintiff argues that the ALJ rejected the questionnaire form opinions of Dr. Shah without adequate support to the contrary, which opinions speak to Plaintiff's ability *vel non* to work on a regular and continuing basis.  Initially, the Court notes that although Plaintiff did not identify IBS as a disabling condition in her application for DIB and related paperwork, the ALJ duly acknowledged that there was medical evidence of record, as well as Plaintiff's hearing testimony, related to that condition.  The Court is also aware that the Fifth Circuit has previously characterized responses to a "'questionnaire format'" as "[t]ypical 'brief or conclusory' testimony" and declined to accord such responses controlling weight when they lack "explanatory notes" or "supporting objective tests and examinations."  *Heck v. Colvin*, 674 Fed.Appx. 411, 415 (5th Cir. 2017)(quoting *Foster v. Astrue*, 410 Fed.Appx. 831, 833 (5th Cir. 2011)).

In the present case, the questionnaire form that was completed by Dr. Shah on January 5, 2017 is accompanied by a contemporaneous treatment note of that same date which provides at least minimal support for the opinions that the doctor expressed on the form.  Obviously, in rendering a diagnosis or developing a treatment plan, a doctor must to some extent rely upon the history and symptoms reported by the patient and there is no indication that Dr. Shah viewed Plaintiff's report as anything other than credible notwithstanding the fact that certain objective tests may have produced negative results.[7] Having found that Dr. Shah's checklist form opinions were not entitled to controlling

---

[6] The latter statement forms the basis for Plaintiff's third challenge to the Commissioner's decision.

[7] If Dr. Shah's checklist form opinions are credited, it is difficult to see how Plaintiff's IBS and related symptomology could be properly characterized as "... a slight abnormality ... which would have no more than a minimal effect on an individual's ability to work."  SSR 85-28, 1985 WL 56856 at *3.

weight, the ALJ was required to make the detailed analysis required by 20 C.F.R. §404.1527(c) unless there is reliable medical evidence from a treating or examining physician controverting Dr. Shah's opinions. *Mills v. Berryhill*, No. 16-CV-0331, 2017 WL 3972009 at *15-18 (N.D. Tex. Aug. 3, 2017), *adopted*, 2017 WL 3891391 (N.D. Tex. Sept. 6, 2017).[8] Unfortunately, the ALJ's decision in this case provides very little explanation of the specific evidence that she relied upon in declining to give Dr. Shah's opinions controlling weight, opinions which bear upon Plaintiff's ability to function in the workplace on a regular and continuing basis. SSR 96-8p, 1996 WL 374184 at *1 ("RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment ..., <u>including the impact of any related symptoms</u>")(emphasis added). Accordingly, it will be recommended that Plaintiff's case be remanded to the Commissioner for further development and consideration of the evidence pertaining to Plaintiff's IBS. *See*, e.g., *Hall v. Commissioner of Social Security*, 218 Fed.Appx. 212, 217 (3rd Cir. 2007)(remand to consider non-exertional limitation of need to frequent restroom more than scheduled breaks allow).[9]

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that Plaintiff's case be remanded to the Commissioner for further proceedings consistent with the Court's opinion.

---

[8] As Plaintiff's application for DIB was filed on February 5, 2016, the six factors in §404.1527(c) remain relevant. *Mill*, 2017 WL 3972009 at *11 n. 7.

[9] In light of this recommendation, a discussion of Plaintiff's other challenges is pretermitted. And, notwithstanding this favorable recommendation, the Court expresses some degree of disappointment with the briefing provided by Plaintiff in this case. By way of example, on page four of her supporting memorandum, Plaintiff cites *Frank v. Barnhart*, 326 F.3d 618, 621 (5th Cir. 2003) as a case "... reversing the decision of the Secretary of DHHS, ..." (Rec. doc. 16-2, p. 4). A review of the cited decision, however, reveals it to be the Fifth Circuit panel's denial of rehearing after it had earlier affirmed the district court's decision denying Social Security benefits. *Frank v. Barnhart*, 34 Fed.Appx. 963 (5th Cir. 2002)(table). In the future, counsel may wish to exercise greater caution in citing legal authorities to the Court.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(en banc).[10]

New Orleans, Louisiana, this  17th  day of _____January_____, 2020.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[10] *Douglass* referenced the previously-applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.